IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SAMUEL GARCIA TORRES, </br></br> Plaintiff, </br></br> v. </br></br> WERNER CO. and W.W. GRAINGER INC. and NEW WERNER HOLDING CO., INC., </br></br> Defendants. </br>――――――――――――――――――――― </br></br> INDIANA INSURANCE COMPANY as Subrobgee of PERFORMANCE PAINTING SYSTEMS, LLC, </br></br> Intervening-Plaintiff, </br></br> v. </br></br> WERNER CO., W.W. GRAINGER, INC., and NEW WERNER HOLDING CO., INC., </br></br> Defendants. | Cause No. 3:11-cv-479-CAN |

**OPINION AND ORDER**

Pending before the Court are four motions. The Court held oral argument on all four motions on July 14, 2014. The Court issues the following opinion resolving all four motions as discussed below pursuant to the consent of the parties and 28 U.S.C. § 636(c).

**I.    INTRODUCTION**

Plaintiff, Samuel Garcia Torres ("Torres"), and Defendants, Werner Co. ("Werner"), W.W. Grainger Inc. ("Grainger"), and New Werner Holding Co., Inc. ("New Werner Holding"), (collectively "Defendants"), have each filed a motion for summary judgment and a *Daubert* motion challenging the admissibility of expert opinion evidence as outlined below. Notably,

Intervening Plaintiff, Indiana Insurance Company ("Indiana Insurance"), as subrogee of Performance Painting Systems, LLC ("Performance Painting"), neither filed anything related to any of the pending motions nor appeared at oral argument.

On January 30, 2014, Torres filed his Motion for Partial Summary Judgment seeking summary judgment on Defendants' affirmative defenses. [Doc. No. 60]. Defendants filed their response in opposition to Torres's motion on February 27, 2014. Torres's summary judgment motion became ripe on March 6, 2014, when Torres filed his reply brief. Torres also filed his Objection to Defendants' Expert Witness Reports on January 30, 2014, asking the Court to exclude testimony from Defendants' experts Fredrick J. Bartnicki, P.E. ("Baratnicki") and Thomas W. Eagar, SCD, P.E. ("Eagar"). [Doc. No. 58]. Torres's *Daubert* motion became ripe after Defendants filed their brief in opposition on February 12, 2014, and Torres filed his reply on February 19, 2014.

Defendants filed their Motion for Summary Judgment on January 30, 2014, also. In their motion, Defendants seek summary judgment as to all of Torres's and Indiana Insurance's claims. Defendants' motion became ripe after Torres filed his response in opposition on February 27, 2014, and Defendants filed their reply brief on March 13, 2014. Defendants' *Daubert* motion, also filed on January 30, 2014, asks the Court to exclude opinion evidence from Torres's expert William E. Dickinson, P.E. ("Mr. Dickinson"). [Doc. No. 62]. Torres filed a response brief opposing Defendants' *Daubert* motion on February 13, 2014. Defendants filed their reply on February 20, 2014, making their motion ripe.

For the reasons discussed below, the Court denies both *Daubert* motions, grants Defendants' motion for summary judgment, and denies as moot Torres's motion for partial summary judgment.

## II.     RELEVANT BACKGROUND

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

On December 29, 2009, Torres was employed as a prepper for Performance Painting in Elkhart, Indiana. As a prepper, Torres prepared recreational vehicles for painting by sanding them down and by placing paper over the vehicle's windows and roof. On that particular day, Torres arrived for work at Performance Painting at 6:00am. He then went to the finishing department to find a ladder so he could begin work on an RV. After locating a ladder, he moved it to his work area. He placed the ladder next to the RV in such a way so that when his feet were straight ahead, his body would be parallel to the RV. Torres ascended the ladder and began using a black marker to cover paint that had been put on the windows. While using the black marker, he heard a loud pop, the ladder collapsed, and he fell. Torres immediately lost consciousness and did not regain consciousness until he arrived at the hospital.

Shortly after the accident, Indiana Insurance conducted an investigation regarding the fall for Torres' worker's compensation claim. After the investigation was completed, the ladder was repaired and put back into use but was subsequently misplaced.

In the meantime, Torres filed his complaint in this action on November 18, 2011, seeking compensation from Defendants for his injuries in the fall pursuant to Indiana products liability law alleging defective design of the ladder, defective manufacturing of the ladder, and improper labeling, instructions, or warnings on the ladder. On April 26, 2012, Defendants filed their answer to Torres's amended complaint asserting affirmative defenses including that (1) Torres was aware of the danger of the ladder and proceeded to use the ladder in its dangerous condition;

(2) Torres used the ladder in a manner that it was not intended to be used causing his injury; (3) the ladder was modified after its delivery to the initial user causing Torres's injury; (4) Performance Painting's or another nonparty's negligence in failing to properly maintain or repair the ladder caused Torres's injury; (5) Performance Painting or a nonparty failed to take adequate steps and precautions for safe use of the ladder causingTorres's injury; and (6) Plaintiffs are barred from recovery by virtue of the statute of limitations. Doc. No. 25 at ¶¶ 6, 10, 11, 13, 15, & 16.

The parties litigated this case without access to the ladder at issue until a ladder that Torres contends was the ladder from which he fell was located on March 28, 2013. Once located, the ladder was shipped to Wolf Technical Service in Indianapolis where it remains today. Despite Defendants' uncertainty as to whether the ladder was the same ladder that Torres used on December 29, 2009, the parties conducted discovery regarding the ladder, which included retaining experts to examine the ladder along with one of its bolts and offer their opinion on the ladder's failure. Discovery revealed that Werner Co. manufactured the ladder and that W.W. Grainger Inc. sold Performance Painting the ladder between March 19 and March 21, 2008. As would be expected, however, the experts offer conflicting theories as to how and why the ladder failed.

## II. ANALYSIS

### A. Standards of Review

#### 1. Motions to Exclude Expert Opinion Evidence, or *Daubert* Motions

Under Federal Rule of Evidence 702, an expert witness deemed qualified based on knowledge, skill, experience, training or education

> may testify . . . if (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a

> fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Therefore, Rule 702 leaves the trial judge with the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1983). "To do so, the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed. R. Evid. 702). In addition, the court must determine whether an expert is offering legal conclusions, which experts cannot make. *United States v. Diekhoff*, 535 F.3d 611, 620 (7th Cir. 2008).

"[T]he reliability of the expert's principles and methods can be examined by looking at factors such as (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 593–94). The Court is not ultimately concerned about the "correctness of the expert's conclusions," but with "the soundness and care with which the expert arrived at her opinion." *Id.* (citing *Daubert*, 509 U.S. at 595). As a result, the court "must focus . . . solely on principles and methodology, not on the conclusions they generate." *Id.* (internal quotations omitted). As long as the expert's principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

5

### 2. Summary Judgment

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court must evaluate all the evidence in a light most favorable to the nonmovant and all inferences must be in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986). An issue is genuine if from the evidence a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248.

The court must grant summary judgment against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case on which that party will bear a burden. *Celotex Corp.*, 477 U.S. at 322. To overcome a motion for summary judgment, the nonmoving party must not rest on allegations or denials in the pleadings. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). The nonmoving party must present sufficient evidence to show the existence of each element of the case it will bear the burden at trial. *Id*. In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1113 (7th Cir. 2013) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)).

Federal courts sitting in diversity apply state substantive law. *Milwaukee Metro. Sewerage Dist. v. Am. Int'l Specialty Lines Ins. Co.*, 598 F.3d 311, 326 (7th Cir. 2010). Both parties are in agreement that Indiana state law governs this action.

B.  **The Court Need Not Conduct a Full *Daubert* Analysis to Resolve the Pending Motions to Exclude the Opinion Evidence from the Parties' Retained Experts.**

In considering the two *Daubert* motions, the Court recognizes the interaction of the challenged expert opinion evidence with the summary judgment standard. Of particular concern is the Court's obligation to evaluate all the evidence in a light most favorable to the nonmovant and to make all inferences in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986). Of greatest concern to the Court is Defendants' motion to exclude the testimony of Torres's expert, Mr. Dickinson. Torres relies heavily on Mr. Dickinson's expert testimony to support his claim that the bolt, which allegedly popped when Torres fell, failed due to overloading that could have resulted from an over-tightening of the bolt.

As discussed below, however, Mr. Dickinson's testimony about the over-tightening actually demonstrates the weakness of Torres's case. In fact, even if Mr. Dickinson's opinion could survive the *Daubert* reliability and relevance analysis and was found admissible, which presumably would benefit Torres as the nonmovant, Torres cannot survive summary judgment. As a result, the Court need not conduct a full *Daubert* analysis as to Mr. Dickinson because the inclusion or exclusion of his opinion will not change the outcome on summary judgment.

As to Torres's motion to exclude Defendants' experts, Mr. Bartnicki and Mr. Eagar, the outcome is the same. Even excluding their opinions in order to give Torres the benefit of the doubt as the nonmovant, Torres cannot survive summary judgment making a full *Daubert* analysis of Mr. Bartnicki and Mr. Eagar equally unnecessary. Therefore, the Court **DENIES** both Torres's motion [Doc. No. 58] and Defendants' motion [Doc. No. 62].

C.  **Neither Torres nor Indiana Insurance Has Presented Evidence Upon Which a Reasonable Jury Could Reach a Verdict in Their Favor.**

Defendants seek entry of summary judgment against Torres and Indiana Insurance as to their claims that the ladder involved in Torres's accident was defectively designed, defectively manufactured, or contained improper labeling, instructions, or warnings. Defendants argue that Torres has failed to meet his burden of proof as to these strict liability claims. Defendants further contend that W.W. Grainger is entitled to summary judgment because it is not a manufacturer, and therefore cannot be strictly liable under Indiana law. In his response brief, Torres conceded that W.W. Granger is entitled to summary judgment. He further conceded that that summary judgment should be granted as to his claims that the ladder was defectively designed and that the ladder contained improper labeling, instructions, or warnings. Therefore, the sole claim remaining in this case is that the ladder involved in Torres's accident was defectively manufactured. This opinion will address only that issue.

The Indiana Product Liability Act ("IPLA") governs liability of a manufacturer for a defective product, regardless of the legal theory from which the claim arises. Ind. Code § 34-20-1-1. The IPLA holds the manufacturer liable for a product defect when (1) the product was defective; (2) the defect made the product unreasonably dangerous; (3) the defect existed when it left the control of the manufacturer and reached the plaintiff without substantial alteration; (4) the plaintiff was injured; and (5) the product's defect was the proximate cause of the plaintiff's injury. Ind. Code § 34-20-2-1; *Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1103 (S.D. Ind. 2003). A product is defective when "it is in a condition not contemplated by reasonable persons among those considered expected users or consumers of the product; and that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption." Ind. Code § 34-20-4-1.

Defendants argue that Torres has offered no evidence to support the first three elements of liability; that the ladder was defective, it was unreasonably dangerous, and that it was defective when it left the control of the manufacturer. Defendants note that Torres's expert, Mr. Dickinson, conducted only a visual inspection of the ladder allegedly involved in Torres's accident as well as the bolt that had allegedly failed. Defendants cite to Mr. Dickinson's testimony where he refused to find that there was any defect in the ladder while explaining that "[t]he only possible exception would have been a manufacturing problem with over-tightening the bolt." Doc. 65-5 at 10. Defendants further point to Mr. Dickinson's testimony based solely on the assumption that bolt was over-tightened that the use of the type of bolt used on the ladder in and of itself did not create a defective condition. *Id.* at 11. Defendants also argue that Torres has not offered evidence to show that any potential defect, such as an over-tightening of a bolt, occurred at the manufacturer. In particular, Defendants cite to Mr. Dickinson's admission that he had no evidence to "support . . . any theory or opinion that the bolt was over-tightened at Werner" during the manufacturing process. *Id.* at 12. Without any other evidence to show that the bolt was over-tightened at Werner, Defendants conclude that Plaintiffs cannot meet the burden of proof for strict liability based on a manufacturing defect. In essence, then, Defendants rest on Plaintiffs' inability to establish entitlement to judgment as a matter of law, which precludes them from defeating summary judgment.

Plaintiffs argue that Mr. Dickinson's expert opinion, along with Torres's testimony, is enough evidence for a reasonable jury to find that the ladder was defective. They reason that direct evidence is not required to pass summary judgment. Plaintiffs rely on *Malen v. MTD Products, Inc.*, 628 F.3d 296 (7th Cir. 2010) as analogous to the situation at issue here. *Malen* was a products liability case where the plaintiff, Malen, was injured when the blade of his

9

lawnmower failed to stop when the plaintiff got up from the lawnmower's seat. *Id.* at 299–300. When Malen got off the lawnmower, his foot slipped under the cutting deck and the rotating blade severely injured his foot. *Id.* at 300. Malen then filed a product liability action against both the manufacturer and the seller. *Id.* at 298. The lawnmower at issue was equipped with an operator presence control ("OPC") device that would stop the engine if the operator rose from the seat without first disengaging the blade. *Id.* at 298. Malen offered expert testimony that the lawnmower's OPC was defective and that the lawnmower was defective when it left the manufacturer. *Id.* at 300. Malen also testified that he had never disconnected the OPC from the lawnmower. *Id.* at 304. The defendants moved for summary judgment, arguing that Malen could not establish that the mower was defective because the evidence did not exclude the possibility that a third party had tampered with the mower after it had left the manufacturer and seller. *Id.* at 301–02.

The district court granted summary judgment, which the Seventh Circuit overturned. The Seventh Circuit found that summary judgment was not appropriate despite Malen's sole reliance on expert testimony and the testimony of the plaintiff to defeat summary judgment. The court reasoned that the circumstantial evidence from the plaintiff's testimony and the plaintiff's expert was enough for a reasonable jury to find for Malen. Plaintiffs in this case contend that the Court should adopt the reasoning of the court in *Malen* because the facts are similar. Plaintiffs admit that they do not have any direct evidence to support their allegation that the ladder was defective, but they reason that circumstantial evidence is enough to support a reasonable jury to find in their favor.

The Court agrees that circumstantial evidence itself may be sufficient to defeat a motion for summary judgment because it may be sufficient for a fact finder to draw a reasonable

inference. In particular, "under the Indiana Strict Product Liability Act a plaintiff may use circumstantial evidence to establish that a manufacturing defect existed only when the plaintiff produces evidence by way of expert testimony, by way of negating other reasonable causes, or by way of some combination of the two." *Smith v. Ford Motor Co.*, 908 F. Supp. 590, 593 (N.D. Ind. 1995) (quoting *Whitted v. Gen. Motors Corp.*, 48 F.3d 1200, 1209 (7th Cir. 1995)). Plaintiffs, however, articulate the holding of *Malen* too broadly. While the plaintiff in *Malen* relied on circumstantial evidence, Malen supported his contention with specific facts and not mere allegations. Malen offered facts that equipment on the lawnmower, which was designed to shut off the blade when it was in reverse, was not working at the store where he purchased it. *Malen,* 628 F.3d at 300. Malen had test driven the lawnmower in reverse and the blade had remained running. *Id.* at 301. Facts also supported Malen's expert's opinion that the OPC was disconnected at the manufacturer. First, the contacts were "grimy" suggesting that the OPC wires were possibly not connected for quite some time. *Id.* at 300. Second, the expert did not notice any scratches on the wires. *Id.* at 304. The lack of scratches would support the expert's conclusion that the OPC was never connected in the first place, which in turn would tend to show that the defect occurred at the manufacturer. *Id.*

Malen no doubt survived summary judgment with circumstantial evidence, but circumstantial evidence supported with facts, which is distinguishable from the evidence presented by Plaintiffs in this case. First, the parties in *Malen* agreed that the OPC was defective on the lawnmower because it was not connected. Unlike the alleged defective product in *Malen*, Plaintiffs here have not provided facts to show exactly how the ladder was defective or if a defect existed at all. Instead, Torres's expert, Mr. Dickinson, confirms the dearth of facts

available to establish both the defectiveness of the ladder and the source of any defect when he stated:

> I don't think I've ever given an opinion that the product was necessarily defective. There's *the potential* that it was manufactured defectively and put in the stream of commerce *if* it was over-tightened at Werner.

Doc. 65-5 at 12 (emphasis added). Moroever, when asked about what information he used to support his theory, Mr. Dickinson stated, "Just the fact that it appears to be an over-tightening failure, that type of failure. But I do not know where it was over-tightened." *Id*. As a result, Torres's strongest potential evidence, his expert's testimony, cannot establish whether the ladder was defective or whether bolts were actually over-tightened.

The second difference between the evidence in *Malen* and the evidence in this case, is that Malen's expert cited to facts to support that the defect occurred at the manufacturer or seller. Malen's expert stated that the grime on the wires, as well as the lack of scratch marks on them, supported his contention that the OPC was disconnected at the manufacturer. Unlike Malen's expert, Mr. Dickinson has stated that he has no evidence to support that the bolt was over-tightened, let alone over-tightened at Werner. *Id.*

Plaintiffs may only use circumstantial evidence to establish that a product was manufactured defectively if they can produce expert evidence in support, produce evidence that negates any other reasonable causes for the defect, or produces evidence through some combination of both. *Smith*, 908 F. Supp. at 593. In this case, Mr. Dickinson has not negated any reasonable cause of the ladder's collapse. He has only provided a "possible exception" that the ladder could have been over-tightened. Moreover, he was not willing to state that the ladder is even defective. Without more, Torres's circumstantial evidence is not enough evidence for a reasonable jury to find in his favor.

Furthermore, even looking at the evidence in a light most favorable to Torres and adopting Plaintiffs' contention that the ladder was defective because of an over-tightening of a bolt, Plaintiffs have not provided evidence to support all the elements of the claim. In order to hold the manufacturer liable under the ILPA for a defective product, the plaintiff must show that the defect occurred at the factory. Ind. Code § 34-20-2-1. Here, Plaintiffs support their contention that the ladder was over-tightened at the factory by stating that evidence does not exist to show that Performance Painting tightened the ladder. They further argue that no evidence exists that Torres tightened the ladder.

A nonmovant must provide "definite, competent evidence" to survive a summary judgment motion. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby, Inc.*, 477 U.S. at 251-52 (1986). Here, Plaintiffs have not provided any evidence for which the jury could rely about where the defect occurred. They rely on Defendant's lack of evidence to support their allegation. Plaintiffs misinterpret their burden. It is their burden, not Defendants', to present evidence from which a reasonable jury could return a verdict in their favor. Plaintiffs have not presented any facts to support their allegation that the ladder was defective at Werner's factory. Furthermore, Plaintiffs admit that the record has some reference to Performance Painting doing maintenance on their ladders, likely including the one involved in Torres's accident. Even seen a light most favorable to Plaintiffs, this evidence only tends to reduce any possibility that the defect on the particular ladder at issue here would have occurred at Performance Painting rather than Werner.

Therefore, looking at the evidence presented in its entirety and in the light most favorable to Plaintiffs, the Court cannot find that Plaintiffs have offered evidence sufficient to establish the third element of their claim, that the ladder was defectively manufactured. For this reason, a reasonable jury could not find in Plaintiffs' favor and Defendants are entitled to summary judgment.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** both Torres's motion to exclude expert testimony [Doc. No. 58] and Defendants' motion to exclude expert testimony [Doc. No. 62]. In addition, the Court **GRANTS** Defendant's motion for summary judgment. [Doc. No. 63]. Because the Court has granted summary judgment in favor of Defendants, their affirmative defenses are moot. Therefore, the Court **DENIES AS MOOT** Plaintiffs' motion for partial summary judgment. [Doc. No. 60]. The Clerk is **INSTRUCTED** to enter judgment in favor of Defendants as to all counts.

**SO ORDERED.**

Dated this 18th day of July, 2014.

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge